```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8-3-2018
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ADAM ROMANOWICZ,

                        Plaintiff,

            -against-

ALISTER & PAINE, INC.,

                        Defendant.
-------------------------------------------------------------X

**REPORT & RECOMMENDATION**
17-CV-8937 (PAE) (KHP)

**TO: THE HONORABLE PAUL A. ENGELMAYER, UNITED STATES DISTRICT JUDGE**
**FROM: KATHARINE H. PARKER, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Adam Romanowicz, a photographer, commenced this action against Defendant

Alister & Paine, Inc. ("API") alleging copyright infringement under 17 U.S.C. §§ 106, 501 and

falsification, removal, and/or alteration of copyright management information in violation of

17 U.S.C. § 1202 after API used one of Plaintiff's photographs on its website without permission

or payment.  In the Complaint, Plaintiff requested the following relief:  (1) with respect to the

copyright infringement, Plaintiff's actual damages and Defendant's profits, gains or advantages

attributable to the infringement and (2) with respect to the falsification, removal and/or

alteration of copyright management information, either actual damages and Defendant's

profits, gains or advantages gained from such conduct or statutory damages of at least $2,500

and up to $25,000 for each instance of falsification, removal and/or alteration of copyright

management information (the "Complaint" or "Compl.", Doc. No. 1.)  The Complaint also

requested an award of costs, expenses, attorney's fees and pre-judgment interest under 17

U.S.C. § 1203.  Finally, the Complaint requested that the Court require Defendant account for

all profits, income, receipts, or other benefits derived by Defendant.

On April 25, 2018, the Court granted Plaintiff's motion for a default judgment in light of Defendant's failure to appear in or otherwise defend against this action.  (Doc. No. 18.)  The matter was then referred to the undersigned for an inquest on damages.  In his submission for damages, Plaintiff requests $10,000 in actual damages for Defendant's violation of the Copyright Act, $25,000 in statutory damages for Defendant's violation of the Digital Millennium Copyright Act, $5,810 in attorney's fees, and $519 in costs.  (Plaintiff's Memorandum of Law in Support of Inquest on Damages, (the "Memorandum") or ("Pl. Mem."), Doc. No. 20 at 1, 4-5, 7.)

For the reasons stated below, I recommend that the Court enter judgment for Plaintiff in the amount of $480 in actual damages for Defendant's copyright infringement and $2,500 in statutory damages for Defendant's falsification, removal and/or alteration of Plaintiff's copyright management information.  I further recommend that the Court award $3,500 in attorney's fees and $519 in costs.

## BACKGROUND

It is well-settled that in light of Defendant's default, Plaintiff's allegations, with the exception of those related to damages, are accepted as true.  *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)). Accordingly, the following facts are established as a result of Defendant's default:

- Plaintiff is a professional photographer who licenses his photographs to media outlets for a fee.

- Defendant is a corporation organized and existing under the laws of Delaware with a place of business at 40 Stapleton Court, Middletown, New York that owns and

operates a website at the URL: www.AlisterPaine.com.

- In January 2011, Plaintiff photographed a lion head door knocker and published it on his professional website www.3scape.com with a watermark.  Plaintiff's images are available for licensing on his website.

- In April 2011, Plaintiff also published the photograph on the website www.fineartamerica.com with a gutter credit stating his name.[1]

- On December 24, 2012, Defendant ran an article on its website entitled "Opportunity Knocks:  Make Sure 2013 Is Your Year For Big Change."  *See* www.alisterpaine.com/2012/12/24/opportunity-knocks-make-sure-2013-is-your-year-for-big-change/.   The article featured a picture of Plaintiff's lion head door knocker. (Compl., Exs. A-B.)  The picture has since been removed from Defendant's website.

- Defendant did not license the photograph from Plaintiff for use on its website nor have Plaintiff's permission to publish it.  Defendant also published the photograph without attribution to Plaintiff.

- On March 31, 2017, Plaintiff registered the photograph, together with other photographs taken in 2011, with the U.S. Copyright Office.  The photographs were assigned the Copyright Registration Number VA 2-051-111.

- On November 15, 2017, Plaintiff filed the Complaint in this action seeking the relief

---

[1] The bare bones Complaint does not state that the photograph was published on Plaintiff's professional website or provide the exact dates when the photograph was taken, published or registered with the U.S. Copyright Office.  The Complaint does, however, attach as Exhibit C an image of the photo as it was displayed on www.fineartamerica.com in April 2011.  (Compl., Ex. C.)  To supplement the information in the Complaint, Plaintiff submitted an affidavit in support of his motion for damages in which he attests that he took the photograph in January 2011 and uploaded it to his own professional website at an unspecified point in time and attaches a picture of it displayed on his website.  The image on Plaintiff's professional website shows a watermark "3scape.com."  (Affidavit of Adam Romanowicz ("Romanowicz Aff."), Doc. No. 21 ¶ 6 & Exh. A.)

described above.

• Defendant failed to appear or answer the Complaint. Therefore a default judgment
  was entered against Defendant on April 25, 2018.

On April 26, 2018, this Court directed Plaintiff to serve and file his papers supporting
his request for damages by May 25, 2018 and provide proof of service on Defendant of the
same. (Doc. No. 19.) The Court also scheduled a damages inquest hearing for June 19, 2018.
Neither Plaintiff's counsel nor Defendant appeared for the hearing. Furthermore, it appears
that contrary to this Court's April 26 Order, Plaintiff's counsel failed to serve Defendant with
the Court's April 26 Order or his application for damages.

On June 22, 2018, this Court sanctioned Plaintiff's counsel $200 for failing to comply with
this Court's prior Order, rescheduled the damages inquest hearing for July 23, 2018 and again
directed Plaintiff's counsel to serve Defendant. (Doc. No. 24.) On July 2, 2018, Plaintiff's counsel
filed an Affidavit of Service stating that he "mailed the supporting documents including the court's
order in docket #19, the default judgment issued by Honorable Paul A. Engelmayer, Plaintiff's
memorandum of law in Support of Inquest on Damages, Plaintiff's proposed findings of fact and
conclusions of law in support of default judgment, clerks' certificate of default, complaint (with
Exhibits), affidavit of service, the order on Docket #24 via certified mail to Defendant's last known
address at 40 Stapleton Court, Middletown, New York 10940." (Doc. No. 25.) Plaintiff's counsel
also attached a copy of the certified mail receipt to his affidavit. *Id.*

On July 23, 2018, this Court held a damages inquest hearing. Defendant did not make any
written submissions or appear at the hearing. Plaintiff's counsel confirmed at the hearing that he
had notified Defendant of the hearing via mail.

**DISCUSSION**

**I.    *Conduct of Hearing and Proof of Damages***

Under Rule 55 of the Federal Rules of Civil Procedure, a court "may conduct hearings . . .

to determine the amount of damages."  Fed. R. Civ. P. 55(b)(2).  The Second Circuit has held

that a court is not required to hold a hearing where it has "ensured that there was a basis for

the damages specified in the default judgment." *Transatlantic Marine Claims Agency, Inc. v. Ace

Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997) (internal quotation

marks omitted).  In lieu of a hearing, courts may rely on detailed affidavits or documentary

evidence to evaluate the proposed sum.  *Id.*  "Rule 55(b)(2) and relevant case law give district

judges much discretion in determining when it is necessary and proper to hold an inquest on

damages." *Tamarin v. Adam Caterers, Inc*., 13 F.3d 51, 54 (2d Cir. 1993) (internal quotation

marks omitted).  Plaintiffs bear the burden of establishing their entitlement to recovery and

thus must substantiate their claims with evidence to prove the extent of their damages.  *See

Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992).

Here, a damages inquest hearing was held and Plaintiff filed papers supporting his

request for damages, including a memorandum of law, proposed findings of fact and

conclusions of law, Plaintiff's affidavit, and a declaration from counsel attaching documentation

of fees and costs incurred in this action.  Plaintiff states in his affidavit that he licenses his

photographs to media outlets for a fee.  (Romanowicz Aff. ¶ 2.)  He states that he uploaded the

lion head doorknocker photograph to his own website and to the Fine Art America website

with a gutter credit identifying himself as the photographer.  (*Id.* at ¶¶ 4-6.)  He states that he

never licensed the photograph that is the subject of this litigation and that the Defendant never

contacted him or attempted to license the photograph.  (*Id.* at ¶¶ 9-10.)  At the damages

5

inquest hearing, Plaintiff's counsel also represented that Plaintiff had never sold a copy of the photograph.

As a proxy for determining damages, Plaintiff points to a similar image published on Getty Images' website that can be licensed to a commercial online blog for up to three years for $480. He states that he would charge the same for his photograph. (*Id.* at ¶¶ 11-15; Ex. C.)

Plaintiff's counsel's declaration includes time records that indicate that counsel spent 16.6 hours of time in total on this matter, for a total cost of $5,810 in fees. (Declaration of Richard P. Liebowitz, ("Liebowitz Declaration" or "Liebowitz Decl."), Doc. No. 22, Ex. A.) This time included consulting with Plaintiff, reviewing the case file, preparing the Complaint, default motion, and damages inquest submissions, and preparing for and attending court conferences. All of the time appears to have been spent by lead counsel, who charges $350 per hour, and is the named partner and founder of his firm. The time records also include purported charges for a $400 court filing fee and $15 for certified mail. Counsel also attaches bills from the process server reflecting $104 in costs. (*Id.*, Ex. B.)

## II. *Availability of Damages Under the Copyright Act and the Digital Millennium Copyright Act*

### A. *Copyright Act*

Plaintiff pleads a claim under the Copyright Act because Defendant used Plaintiff's photograph without paying Plaintiff for it or obtaining Plaintiff's permission. (Compl. ¶¶ 7-12, 15-16.) Plaintiff is therefore entitled to relief for copyright infringement.[2] Under the

---

[2] The Court notes that Plaintiff's claims were brought after expiration of the three-year statute of limitations applicable to claims under the Copyright Act and the Digital Millennium Copyright Act. *See* 17 U.S.C. § 507. However, Defendant defaulted, thereby waiving its affirmative defense that the claims are barred by the statute of limitations. Thus, the Court is reluctantly constrained to consider Plaintiff's damages application. *See Latimore v. Schilling*, No. 06-cv-7639 (BSJ) (AJP), 2008 WL 2421628, at *2 n.4 (S.D.N.Y. June 13, 2008), *adopted* 2008 WL 2774465 (S.D.N.Y. July 16, 2008).

Copyright Act, "an infringer of copyright is liable for either (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b) or (2) statutory damages, as provided by subsection (c)."  17 U.S.C. § 504(a).  Plaintiff has elected to recover actual damages for Defendant's infringement pursuant to section 504(b) of the Act.[3] Under section 504(b), Plaintiff also can recover "profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages."  17 U.S.C. § 504 (b).  To establish the infringer's profits, "the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work."  *Id.*  Here, Plaintiff concedes he never sold or licensed the photograph at issue.  (Romanowicz Aff. ¶ 9.)  Additionally, Defendant has not appeared and Plaintiff has no proof of Defendant's gross revenue or profits.  Thus, the Court must use some other measure to determine an award under section 504(b) of the Act.

"The Copyright Act grants courts discretion in calculating the actual damages sustained by a prevailing party, as long as the claim is reasonable according to typical market values."  *Sheldon v. Plot Commerce*, No. 15-cv-5885 (CBA) (CLP), 2016 WL 5107072, at *14 (E.D.N.Y. Aug. 26, 2016), *adopted* 2016 WL 5107058 (S.D.N.Y. Sept. 19, 2016).  It is "unreasonable to expect plaintiffs to be able to calculate the actual damages they have suffered – particularly in default cases."  *Id.*  Thus, courts have adopted a wide range of methods by which to measure actual damages in copyright

---

[3] Statutory damages are only available for those works whose copyrights were registered at the time the infringement occurred.  *See* 17 U.S.C. § 412 (no award of statutory damages or of attorney's fees shall be made for any infringement of copyright commenced after first publication of the work and before the effective date of its registration).  As Plaintiff did not register his photograph until well after the infringement, he is not eligible for and does not seek statutory damages under the Copyright Act.

infringement actions, including the award of lost licensing fees. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 167 (2d Cir. 2001) (holding that a copyright holder's actual damages may include the loss of a license fee "on which a willing buyer and a willing seller would have agreed for the use taken by the infringer").  A plaintiff seeking actual damages based on a lost licensing fee must show "that the thing taken had a fair market value," not merely what the copyright owner "would have charged."  *Id.* at 166.

Plaintiff asserts that a fair market value of a license to Defendant would have been $480 based on what Getty Images charges to license a similar photograph to a commercial online blog. (Romanowicz Aff. ¶¶ 11-14; Ex. C.)  Plaintiff states that Getty Images is a "leader in the stock photo licensing industry" and that "its prices reflect what a willing seller and a willing buyer would agree upon."  (*Id.* ¶ 12.)  The photograph on Getty Images' website is certainly similar to Plaintiff's photograph, though the Court notes the Getty Images photograph is in color, while Plaintiff's photograph is in black and white.  Further, Plaintiff has not shown that Getty Images has ever actually licensed its photograph for $480.  However, Plaintiff maintains a professional website and asserts that he would charge $480 to license the photograph.  Thus, it is reasonable to assume that Defendant would have had to pay $480 to license Plaintiff's photograph or a photograph similar to it.

Citing to the $480 license fee for the similar image, Plaintiff "estimates" his actual damages are $2,000, but he appears to seek $10,000 in actual damages.  (Pl. Mem. at 1, 4.)  Plaintiff argues he is entitled actual damages in the thousands of dollars because Defendant's conduct was willful. (*Id.* at 2-3.)  However, willfulness of a violation is not considered when determining actual damages under the Copyright Act.  Willfulness only comes into play when determining statutory damages, which are not available to Plaintiff.  17 U.S.C. § 504(c)(2); *see also* note 3 *supra*.  The

cases cited by Plaintiff concerning awards of statutory damages are therefore inapposite. *See, e.g.*, *N.A.S. Imp. Corp. v. Chenson Enterpr.*, 968 F.2d 250, 252 (2d Cir. 1992); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir. 2001); *Rovio Entertainment, Ltd. V. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 545-46 (S.D.N.Y. Apr. 1, 2015) ("Where a court finds willful infringement, it "in its discretion may increase the award of statutory damages to a sum of not more than $150,000") (citing 17 U.S.C. § 504(c)(2)); *All-Star Mktg. Grp., LLC v. Media Brands Co.*, 775 F. Supp. 2d 613, 621 (S.D.N.Y. 2011).  Some of Plaintiff's cited cases do not even concern claims for copyright infringement. *See, e.g.*, *Chloe v. Zarafshan*, No. 06-cv-3140 (RJH) (MHD), 2009 WL 2956827 (S.D.N.Y. Sept. 15, 2009) (trademark); *Malletier v. Carducci Leather Fashions, Inc.*, 648 F. Supp. 2d 501, 505 (S.D.N.Y. Aug. 19, 2009) (trademark but noting that the Copyright Act "permits an award of statutory damages for willful copyright infringement").

While it is true that a plaintiff can recover a defendant's profits from the use of the photograph, Plaintiff does not provide any information from which the Court could reliably ascertain such profits, if any.  Indeed, this Court doubts that Defendant profited at all from posting Plaintiff's photograph as an accompaniment to an article on its website concerning strategies for workplace success.

Accordingly, I recommend that Plaintiff be awarded $480 in actual damages for Defendant's violation of the Copyright Act.  The Court believes this award is appropriate based on the fee charged for a similar image by Getty Images and because it is consistent with the objective of the Copyright Act to enable artists like Plaintiff to earn a living either by selling or licensing their copyrighted works. *On Davis*, 246 F.3d at 164.

### B. Digital Millennium Copyright Act

Plaintiff also seeks damages under the Digital Millennium Copyright Act ("DMCA")

9

because Defendant removed copyright management information—his name and watermark—from Plaintiff's photo when posting it on the website.[4]  17 U.S.C. § 1202(a)-(c).  Plaintiff has pled a claim under the DMCA and is therefore entitled to relief under this statute.  (Compl. ¶¶ 23-29.)

Under the DMCA, "a person committing a violation of [section 1202] is liable for either (A) the actual damages and any additional profits of the violator . . . or (B) statutory damages, as provided in paragraph (3)" 17 U.S.C. § 1203(c)(1).  The DMCA provides for statutory damages of no less than $2,500 and no more than $25,000.  17 U.S.C. § 1203(c)(3)(B).  Plaintiff seeks the maximum amount of statutory damages, $25,000, for Defendant's violation.  (Pl. Mem. at 4.)

 "The award of statutory damages is especially fitting in the default judgment context where Plaintiffs are without the benefit of any disclosure by the infringer, leaving damages uncertain." *Tu v. TAD System Tech., Inc.*, No. 08-cv-3822 (SLT) (RM), 2009 WL 2905780, at *2 (E.D.N.Y. Sept. 10, 2009).  In determining statutory damages, courts "consider [several] factors, namely, the difficulty of proving actual damages, the circumstances of the violation, whether [d]efendants violated the DMCA intentionally or innocently, and deterrence." *Agence France Presse v. Morel*, No. 10-cv-2730 (AJN), 2014 WL 3963124, at *10 (S.D.N.Y. Aug. 13, 2014).

Having considered the factors set forth in *Morel,* the Court recommends awarding the minimum statutory damages of $2,500 for the one violation alleged.  This recommendation is based on the difficulty of proving actual damages and the fact that Defendant, a publishing

---

[4] Plaintiff may be awarded damages under both the Copyright Act and the DMCA because Plaintiff alleges that Defendant used Plaintiff's image without permission or payment *and* removed Plaintiff's watermark and identifying information from the photograph.  *See Kennedy v. Medgen, Inc.*, No. 14-cv-5843 (ADS) (AYS), 2016 WL 873043, at *2 (E.D.N.Y. Jan. 8, 2016); *see also* note 2.

company presumably aware of the Copyright Act and interested in protecting its own copyrights, could have easily licensed a photo of a lion head doorknocker from Plaintiff or Getty Images.   At the same time, the Court takes into consideration that this action was filed outside the statute of limitations period and that Plaintiff's submissions supporting his request for statutory damages are bare-boned at best.  Indeed, Plaintiff's Complaint and damages application do not even identify the website from which Defendant obtained the photograph. Because the copyright management information on Plaintiff's professional website and the Fine Art America website differs, it is unclear what copyright management information was altered or removed.  Also, there is no evidence in the record that Plaintiff's counsel notified Defendant in advance of filing this action that Defendant was infringing on Plaintiff's copyright in order to resolve the matter outside of litigation.  *Cf Sheldon*, 2016 WL 5107072, at *17 (awarding maximum statutory damages of $25,000 per DMCA violation where Defendant continued to use the photograph despite receiving notice from Plaintiff that its conduct represented infringement).  The Court notes, however, that the photograph is no longer displayed on Defendant's website but has no information as to when or why the photograph was removed.

### III.    Attorney's Fees and Costs

Plaintiff seeks $5,810 in attorney's fees and $519 in costs.  Plaintiff is prohibited from recovering attorney's fees under the Copyright Act because Defendant's infringement of Plaintiff's photograph commenced before the effective date of Plaintiff's copyright registration. 17 U.S.C. § 412.  However, the Court "in its discretion may award reasonable attorney's fees" and costs to Plaintiff under the Digital Millennium Copyright Act.  17 U.S.C. § 1203.  An award of fees is not automatic but "lies within the sole and rather broad discretion of the Court."

*Sheldon*, 2016 WL 5107072, at *18 (quoting *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006)).  In exercising this discretion, courts consider a range of equitable factors, "including the non-prevailing party's frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case), together with the need in particular circumstances to advance considerations of compensation and deterrence."  *Id.*

       In evaluating these factors here, this Court finds that modest attorney's fees should be awarded because the case was not frivolous insofar as Plaintiff, whose livelihood is photography, has established that Defendant published his copyrighted work without permission and without paying a license fee.  Photographers must be able to enforce their copyrights to stay in business, but it may not be cost effective for a photographer to enforce those rights when attorney's fees exceed the fees that can be generated from the photo.  And, no lawyer would take on representation without the ability recover reasonable compensation for his work.  Furthermore, defendants will not respect photographers' rights if they are permitted to infringe without facing the prospect of suit and payment of attorneys' fees.

       The party seeking attorney's fees must submit records that enable the Court to determine whether the fee sought is reasonable.  *See Hensley v. Eckerhart,* 461 U.S. 424, 433-34 (1983).  The prevailing party should submit, for each attorney, contemporaneous billing records documenting the date, the hours expended, and the nature of the work done.  *See id.*; *N.Y. State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1154 (2d Cir. 1983). Here, although Plaintiff's counsel provided time records in support of its attorney's fees, the Court believes some of the time reflected is excessive given the work performed in this case (essentially only preparing the Complaint, motion for default judgment, and materials for the

present damages inquest).   For example, counsel spent two and a half hours and charged

$875 to review the case file, and draft and file the Complaint.  The Complaint is barely five

pages long with three one-page exhibits.  Further, Plaintiff's counsel routinely represents

photographers in this district and uses template documents to file complaints.  *See Cruz v.*

*Am. Broad. Companies, Inc.*, No. 17-cv-8794 (LAK), 2017 WL 5665657, at *2 n.11 (S.D.N.Y.

Nov. 17, 2017) (noting that Plaintiff's counsel had filed 452 cases in this Court in the last 21

months).  The Court finds that these tasks should have taken no more than one and a half

hours.  Furthermore, this Court notes that Plaintiff's counsel could have contacted

Defendant prior to filing suit to request a licensing fee for its use of the photograph and

potentially spent even less than three hours to obtain faster relief for the infringement.  It is

unclear whether that would have obviated the need for a lawsuit and the incurring of fees,

but it generally is prudent for a lawyer to attempt to resolve a dispute prior to filing suit to

determine whether a resolution with minimal fees and costs can be achieved for the client.

    In addition, counsel spent over seven hours and charged $2,520 to prepare the motion

for default judgment, and to prepare for and attend the default hearing.  However, "[t]he

time and labor required for seeking a judgment by default, pursuant to Fed. R. Civ. P. 55 and

based on the defendant's failure to plead or otherwise defend, as well as the level of skill

required to perform the legal tasks in connection with it, are . . . *de minimis.*"  *Days Inn*

*Worldwide, Inc. v. Amar Hotels, Inc.*, No 05-cv-10100 (KMW) (KNF), 2008 WL 2485407, at *9

(S.D.N.Y. June 18, 2008).  Plaintiff's "motion" consists of a one page notice of motion,

exhibits that are mostly documents already published on the docket, and a four-page

declaration of counsel with multiple string-cites that counsel appears to have copied from

filings in his many other copyright cases.  A review of the filings make it clear that minimal

13

work and brain power went into this matter.  Additionally, counsel was incredibly sloppy.

Confusingly, Plaintiff's counsel's declaration for a default judgment notes that Plaintiff seeks

$5,000 in statutory damages under the DMCA, yet, in his papers in connection with the

present inquest, Plaintiff seeks $25,000 in statutory damages under the DMCA.  Likewise, as

noted above, he was unclear as to the amount of actual damages he was seeking under the

Copyright Act.  Plaintiff's counsel also used variations of the photograph at issue in different

filings, some of which contained the watermark and identifying information, and some of

which did not.  Despite billing seven hours on the default judgment, Plaintiff's counsel clearly

was not thorough or careful in his preparation, and thus, his fees are excessive.

This Court also believes that other time, such as twenty-five minutes for drafting an

affidavit of service, was excessive.  This task should have taken no more than ten minutes.

Counsel spent almost four hours preparing the materials for the present inquest on

damages.  His submissions in support of the inquest on damages contain typographical

errors and do not provide proper case law authority for Plaintiff's damages requests.  Finally,

counsel billed for tasks that could have been performed by an associate or paralegal

(including filing civil cover sheet, drafting and filing request for clerk's certificate of default,

and drafting and filing affidavit of service).  Accordingly, this Court recommends holding that

compensation for only ten hours of time is warranted in this case.

The next issue is the appropriate rate for counsel's time.  Plaintiff's attorney billed at an

hourly rate of $350 and was the only person to bill time for this matter.  When seeking an

attorney's fee award from the district court, "the burden is on the fee applicant to produce

satisfactory evidence–in addition to the attorney's own affidavits–that the requested rates are

in line with those prevailing in the community for similar services by lawyers of reasonably

14

comparable skill, experience and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984). Plaintiff's counsel has not complied with his obligation to submit information supporting his hourly rate of $350. Based on the Court's review of cases in this district and in the Eastern District of New York, it appears that courts have approved associate rates of $350 to $500 for partners in copyright cases. *See, e.g., Lane Crawford LLC v. Kelex Trading (CA) (Inc.)*, No. 12-cv-9190 (GBD) (AJP), 2013 WL 6481354, at *7 (S.D.N.Y. Dec. 3, 2013), *adopted* 2014 WL 1338065 (S.D.N.Y. Apr. 3, 2014) (awarding $350 for intellectual property attorney); *U.S.A. Famous Original Ray's Licensing Corp. v. Famous Ray's Pizza Buffet Inc.,* 12-cv-8753, 2013 WL 5363777, at *7-8 (S.D.N.Y. Sept. 26, 2013) (awarding $425 and $315 hourly rates for intellectual property partners), *adopted* 2013 WL 5664058 (S.D.N.Y. Oct. 17, 2013); *TigerCandy Arts. Inc. v. Blairson Corp.*, No. 09-cv-6215, 2012 WL 760168, at *9 (S.D.N.Y. Feb. 23, 2012) (awarding $500 for intellectual property partner), *adopted* 2012 WL 1948816 (S.D.N.Y. May 30, 2012); *Pyatt v. Raymond*, 10-cv-8764, 2012 WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving $400 to $650 hourly rates for partners in copyright and trademark cases). Accordingly, this Court recommends approving counsel's hourly rate of $350 per hour for ten hours at a total attorney's fee award of $3,500.

Finally, the Court addresses Plaintiff's request for $519 in costs. The Court has discretion to award costs under the DMCA. *See* 17 U.S.C. § 1203(b)(4). Plaintiff has requested reimbursement for the $400 filing fee charged by this Court, $104 for documented service of process expenses, and $15 for certified mail. This Court recommends an award of $519 in costs.

## CONCLUSION

For the reasons stated above, this Court recommends that the Court enter judgment for

Plaintiff against Defendant in the amount of $480 in actual damages for Defendant's violation

of the Copyright Act and $2,500 for Defendant's violation of the DMCA. This Court further

recommends that the Court award $3,500 in attorneys' fees and $519 in costs.


Dated: August 3, 2018                           **Respectfully submitted,**
New York, New York

*Katharine H. Parker*
_____
KATHARINE H. PARKER
United States Magistrate Judge


## NOTICE

    **The Defendant shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Plaintiff shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.**

    **If the Plaintiff files written objections to this Report and Recommendation, the Defendant may respond to Plaintiff's objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2).  Alternatively, if Defendant file written objections, the Plaintiff may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d).  Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul Engelmayer at the United States Courthouse, 40 Foley Square, New York, New York 10007, and to any opposing parties.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Engelmayer. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).**